IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| PENG WANG<br>1807 GREAT FALLS STREET<br>MCLEAN, VA 22101<br><br>    Plaintiff,<br><br>v.<br><br>COLOMA RIVER CAPITAL, LLC<br>1140 3rd STREET, NE, SUITE 2152<br>WASHINGTON, DC 20002<br><br>    Serve: Charles Paret, President<br>           1140 3rd Street, NE, St. 2152<br>           Washington, DC 20002<br><br>CHARLES PARET<br>1140 3RD STREET, SUITE 2152<br>WASHINGTON, DC 20002<br><br>    Defendants. | Case No._____ |

## COMPLAINT

COMES NOW, Plaintiff, Peng Wang, by and through his undersigned counsel and hereby sues Coloma River Capital, LLC and Charles Paret for violation of the DC Human Rights Act, D.C. Code Ann. §2-1401, et. seq., Title VII of the Civil Rights Act of 1964, the DC Wage Payment Act, D.C. Code Ann. §32.1301, et. seq., and Wrongful Termination (Violation of Public Policy) and in support thereof, hereby states as follows:

## PARTIES

1. Plaintiff is an adult resident of the Commonwealth of Virginia.

2. Defendant Coloma River Capital, LLC ("CRC") is a District of Columbia limited liability company with its principal place of business located in the District of Columbia.

3. Defendant Charles Paret is an adult citizen of the District of Columbia and the President and managing member of Defendant CRC.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter based upon 28 U.S.C.A. §1331 because this matter is based a question of federal law.

5. Plaintiff also invokes this Court's diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship, and this matter exceeds the sum or value of $75,000.

6. Venue in this matter is proper based upon 28 U.S.C.A. §1391.

## FACTS OF THE CASE

### Plaintiff's Employment with Defendant CRC

7. Plaintiff was hired by Defendant CRC on or about March 12, 2018 as a Senior Project Manager, pursuant to a March 8, 2018 Employment Contract ("Contract").

8. Plaintiff was responsible for architectural services and obtaining final approval for building plans.

9. Plaintiff was responsible for CRC's efforts to obtain building permits of 6 multi-unit apartment projects to include a mixed-use project, 71 Kennedy St. NW, through the Velocity Program review processes conducted by the D.C. Department of Consumer and Regulatory Affairs ("DCRA").

### Plaintiff's Compensation

10. CRC agreed to compensate Plaintiff at the rate of $85,000.00, paid twice per month ($3,541.66/per pay period).

11. In addition to his base salary, Defendants agreed to pay Plaintiff a bonus of $1,500 for a Building Permit approval for a project of less than 20 units (Small Project) and $3,500.00 for a project of 20 units or more (Large Project), 6 projects total from the submission to DCRA since October 30, 2018.

12. Despite its affirmative obligation to do so, Defendant CRC did not withhold any payroll taxes from Plaintiff's salary.

13. The Defendant CRC was not registered in DC. No business license was found either.

Plaintiff's Employment Term and Renewal

14. Plaintiff's initial employment term was for 1 year.

15. On or about February 7, 2019, Charles Paret agreed to renew Plaintiff's employment term for another year by telling Chapman Paret to enroll him to W-2 again from March 12, 2019 through and including March 11, 2020.

Defendants' Discriminatory Actions

16. Plaintiff is of Chinese decent and speaks English with a noticeable Chinese accent.

17. During his employment, Defendants, specifically Charles Paret made unflattering jokes about people of Chinese ancestry and referred to Chinese people as "dummies".

18. After Plaintiff was terminated, he was replaced by someone outside of his protected class.

Plaintiff's Whistleblowing Activities

19. Plaintiff has legal liability for being directly responsible for designing, supervising, coordinating, managing and submitting the architectural drawings for permits for three properties for building permits: 71 Kennedy Street, N.W., 5412 First Street, N.W., and 1736 Montello

Avenue, N.W, and, indirectly responsible for 429, 431 & 433 Kennedy Street NW, 6 projects total, each in the District of Columbia.

20. For each of these projects, CRC engaged Alfred Liu a licensed architect, as it was required to do pursuant to D.C. law.

21. 12 DCMR § 105.3.10 requires all plans and specifications associated with a building permit application must be "prepared by or under the direct supervision of a registered architect" and the plans and specifications must "bear the architect's…signature and seal…"

22. Defendant sought to bypass the legal requirement that architectural drawings and specifications be reviewed, approved and presented by an architect, and the Defendant sought to affix Mr. Liu's unique architectural seal to the drawings without his consent or approval.

23. The fraudulent and false nature of the drawings would have resulted in a criminal false certification to the D.C. government, which also would have subjected Mr. Wang and the company to serious criminal and civil penalties.

24. In accordance with this regulation, Plaintiff submitted the company's initial plans and drawings to Mr. Liu for review in August or September, 2018, who didn't respond to Plaintiff's email.

25. On February 7, 2019, in anticipation of meetings with the DCRA to discuss the three buildings, 71, 5412 and 1436, Defendant Paret approached Plaintiff and a member of his architectural staff, Marina Kunakasova, regarding the architectural drawings.

26. Defendants represented that Defendants had come to an "agreement" with Mr. Liu regarding the drawings and that Mr. Liu had consented to Defendant CRC copying-and-pasting his seal to the new, revised set of drawings that had been prepared.

27. CRC also instructed Plaintiff and Ms. Kunakasova to upload and submit the stamped drawings to the DCRA via ProjectDox, its online portal.

28. Defendants claimed that Mr. Liu had agreed to having the drawings submitted with his stamp and seal.

29. Plaintiff objected to Defendants instructions.

30. Plaintiff believed that that Mr. Liu had given no such authority to CRC, nor could he give such authority to CRC.

31. At that time, Plaintiff understood that Mr. Liu had only received the revised drawings on February 4, 2019 and had not had sufficient time to review them to ensure they satisfied his earlier concerns, nor had he affixed his seal to and signed the drawings.

32. On or about February 7, 2019 Plaintiff stated to Defendants that submitting the stamped documents without Mr. Liu's approval constituted fraud and violated numerous statutes and regulations of the DCRA.

33. Plaintiff alerted Defendants to his particular concern that the submittals would actually be made under Plaintiff's name using his DCRA account on ProjectDox, which could expose not only CRC, but also Plaintiff to serious legal and criminal liability.

34. After the February 7, 2019 meeting, Plaintiff followed up with Mr. Liu and confirmed that Mr. Liu had not given authority for CRC to stamp or sign the drawings on his behalf or submit them to the DCRA.

35. Mr. Liu confirmed to Plaintiff via text message on the evening of February 7 that he had not stamped the drawings nor given his consent for CRC to copy and paste his stamp or seal on the drawings.

36. Plaintiff again reiterated his objection to CRC's illegal instruction in an email the night of February 8, 2019.

37. Plaintiff stated that CRC's instruction was fraudulent and that he would not abide by the instruction for fear of engaging in fraud or violations of the D.C. building or zoning codes.

38. Plaintiff included employees of DCRA on his February 8, 2019 email notifying them of CRC's intention to violate DC Code and Regulations.

39. On February 10, 2019, Defendant Paret sent Plaintiff a text message stating "Well that email has gotten you fired, you cannot work for our company anymore."

Defendant's Wage Payment Violations

40. On or about May 15, 2018, Defendants failed to pay Plaintiff his regular salary and despite demands, has never made this payment.

41. After Plaintiff was terminated, he was due his final paycheck on or before February 15, 2019 for his work from February 1, 2019 through his termination.

42. Defendants have never made this payment.

43. Plaintiff was able to secure approval for a total of 6 project during his tenure with Defendants, 2 Small Projects and 4 Large Projects.

44. Despite securing the approval, Defendants never paid Plaintiff his agreed upon bonus, totaling $17,000.00.

45. Despite renewing Plaintiff's employment contract for another year as of February, 2019, for one of employment through March 11, 2019, Defendants have failed and refused to pay Plaintiff his salary for his renewed contract.

Exhaustion of Administrative Requirements

46. On or about June 7, 2018, Plaintiff filed a Charge with the EEOC, Charge No. 570-2018-2465.

47. The EEOC dismissed that Charge and issued its Right to Sue Letter in or about July, 2018.

48. When Defendants received the dismissal notice , Defendant Paret insisted that Plaintiff waive his right to sue Defendants or he would be fired, thus retaliating against Plaintiff for engaging in protected activity.

49. Plaintiff filed a second Charge with the EEOC on or about August 4, 2018, Charge No. 570-2018-3021 regarding Defendants' retaliation.

50. Charge No. 570-2018-3021 remains unresolved.

51. Plaintiff has requested a Right to Sue Letter as that matter has been pending for more than 180 days.

52. Finally, Plaintiff filed a 3rd Charge with the EEOC, Charge No. 570-2019-1360, in or about January, 2019.

53. The EEOC issued its Right to Sue Letter on or about March 29, 2019.

COUNT I
VIOLATION OF THE DC HUMAN RIGHTS ACT D.C. CODE ANN. §2-1401, ET. SEQ.

54. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

55. Pursuant to the DC Human Rights Act, it is unlawful for an employer to discriminate against an employee on the basis of his National Origin.

56. Plaintiff was discriminate against and subjected to unequal terms and conditions of employment, including termination on the basis of his National Origin (Chinese) in violation of the DC Human Rights Act.

57. Based on the facts incorporated herein, it is clear that Plaintiff's work performance and contributions at CRC were positive and well received by his employer.

58. Despite Plaintiff's proficient work performance at CRC, statements such as "Chinese people are dummies" offer direct evidence of discrimination on the basis of Plaintiff's National Origin.

59. Plaintiff has suffered and continues to suffer harm and damages as a direct and proximate result of Defendants' unlawful actions.

## COUNT II
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. §2000e

60. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

61. Pursuant to Title VII, it is unlawful for an employer to discriminate against an employee on the basis of his National Origin.

62. Plaintiff was subjected to unequal terms and conditions of employment, including termination in violation of Title VII on the basis of Plaintiff's National Origin.

63. Plaintiff has suffered and continues to suffer harm and damages as a direct and proximate result of Defendants' unlawful actions.

## COUNT III
### RETALIATION – VIOLATION OF THE DCHRA AND TITLE VII

64. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

65. Pursuant to the DC Human Rights Act and Title VII, it is unlawful for an employer to retaliate against an employee who has engaged in protected activity.

66. Plaintiff has engaged in protected activity, by filing the EEO Charges identified herein and has been terminated as a result thereof.

67. Plaintiff has suffered and continues to suffer harm and damages as a direct and proximate result of Defendants' unlawful actions.

## COUNT IV
## VIOLATION OF DC CODE ANN. 32-1301
## DISTRICT OF COLUMBIA WAGE PAYMENT AND COLLECTION ACT

68. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

69. The unpaid base salary (May, 2018 and February, 2019), unpaid Contract, and bonus are all defined as wages by the Wage Act.

70. The Wage Act provides that upon separation, an employee is due all earned but unpaid wages (including accrued but unused leave).

71. The Wage Act further provides that upon Defendants' failure to pay all wages due following separation from employment, Plaintiff is entitled to the unpaid wages plus an amount of treble damages and attorneys' fees.

72. Plaintiff has at all times been prepared to honor the terms of the Contract and remain employed through March 11, 2020.

73. Further, the Wage Act and applicable DC case law provide that both CRC and its principal Defendant Paret are defined as employers by the Act.

74. Defendants, individually, jointly and severally are indebted to Plaintiff for $22,312.48 (unpaid salary and bonus), $85,000 for the renewed contract for a total of $107,312.48 for unpaid wages and an additional $321,937.44 for treble damages.

75. Plaintiff has suffered and continues to suffer substantial harm and damages as a direct and proximate result of Defendants' failure to pay his wages.

### COUNT V
### WRONGFUL TERMINATION – VIOLATION OF PUBLIC POLICY

76. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

77. Under D.C. law, an employer may not discharge an employee for refusing to violate the law, as expressed in either a statute or a municipal regulation.

78. On or about February 7, 2018 Defendants instructed Plaintiff to violate DC Statutes and Regulations by insisting that he forge Mr. Liu's seal on architectural drawing and submit them to DCRA for approval.

79. Doing so would have been a violation of a variety of statutes and regulations, including 12 DCMR § 105.3.10 and 17 DCMR § 3413 pertaining to the oversight and approval of architectural work.

80. Plaintiff stated that CRC's instruction was fraudulent and that he would not abide by the instruction for fear of engaging in fraud or violations of the D.C. building or zoning codes.

81. Plaintiff included employees of DCRA on his February 8, 2019 email notifying them of CRC's intention to violate DC Code and Regulations.

82. On February 10, 2019, Defendant Paret sent Plaintiff a text message stating "Well that email has gotten you fired, you cannot work for our company anymore."

83. Plaintiff has suffered and continues to suffer harm and damages as a result of being wrongfully terminated.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. On Count I, Enter judgment in favor of Plaintiff and against Defendant CRC for violation of the DC Human Rights Act for economic damages in the amount of $85,000.00, compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $500,000.00;

B. On Count II, Enter judgment in favor of Plaintiff and against Defendant CRC for violation of Title VII of the Civil Rights Act of 1964 economic damages in the amount of $85,000.00, compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $500,000.00;

C. On Count III, Enter judgment in favor of Plaintiff and against Defendant CRC for Retaliation for economic damages in the amount of $85,000.00, compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $500,000.00;

D. On Count IV, Enter Judgment in favor of Plaintiff and against Defendants CRC and Charles Paret, individually, jointly and severally in an amount not less than $107,312.48 for unpaid wages and an additional $321,937.44 for treble damages for violation of the DC Wage Act;

E. On Count V, Enter Judgment in favor of Plaintiff and against Defendants CRC and Charles Paret, individually, jointly and severally for economic damages in the amount of $85,000.00, compensatory damages in the amount of $500,000.00 and punitive damages in the amount of $500,000.00 for Wrongful Termination in Violation of Public Policy;

F. Award Plaintiff all of his costs and fees associated with this matter, including attorneys' fees.

Respectfully Submitted,


_____/s/_____
Neil S. Hyman, Esquire
DC Bar No. 465047
Law Office of Neil S. Hyman, LLC
4520 East West Highway, Suite 700
Bethesda, Maryland 20814
301-841-7105 (p)
301-986-1301 (f)
neil@neilhymanlaw.com
*Counsel for Plaintiff*